**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | **:** | |
| **Plaintiff,** | **:** | **Case No. 2:10-CR-196** |
| **v.** | **:** | **Judge Holschuh** |
| **ANTHONY S. MILLER,** | **:** | |
| **Defendant.** | **:** | |
| | **:** | |

**MEMORANDUM OPINION & ORDER**

Defendant Anthony S. Miller was indicted for failure to register as a sex offender under the

Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250(a).  This matter is

currently before the Court on Defendant's motion to dismiss the indictment on three constitutional

grounds.  (Doc. 23).  For the reasons set forth below, the Court denies Defendant's motion.

**I.      Violation of the Non-Delegation Doctrine**

Defendant first argues that 42 U.S.C. § 16913(d), the portion of SORNA that delegates to

the Attorney General the authority to determine whether SORNA should be applied retroactively,

is unconstitutional.  The Supreme Court long ago held that "Congress manifestly is not permitted

to abdicate or transfer to others the essential legislative functions with which it is thus vested."

Panama Refining Co. v. Ryan, 293 U.S. 388, 421 (1935).  "The non-delegation doctrine is rooted

in the principle of separation of powers that underlies our tripartite system of government."

Nevertheless, Congress may delegate certain tasks to other branches of government if it "clearly

delineates the general policy, the public agency which is to apply it, and the boundaries of this

delegated authority."  Mistretta v. United States, 488 U.S. 361, 371-73 (1989) (quoting American

Power & Light Co. v. SEC, 329 U.S. 90, 105 (1946)).  The question is whether Congress has

provided an "intelligible principle" to guide the agency's regulation.  Id. at 372.  Defendant argues

that Congress failed to give the Attorney General adequate guidance concerning the applicability

of SORNA to individuals who, like Defendant, were convicted of sex offenses prior to July 27,

2006, SORNA's effective date.

The first issue that must be addressed is whether Defendant has standing to challenge

Congress's delegation of authority to the Attorney General.  The United States argues that Defendant

lacks standing because the subsection of the statute delegating that authority does not apply to him.

The standing issue turns on a question of statutory construction.  The registry requirements for sex

offenders, and Congress's delegation of authority to the Attorney General, are set forth in 42 U.S.C.

§ 16913, which reads as follows:

> (a) *In general*
>
> A sex offender shall register, and keep the registration current, in each
> jurisdiction where the offender resides, where the offender is an employee,
> and where the offender is a student. For initial registration purposes only, a
> sex offender shall also register in the jurisdiction in which convicted if such
> jurisdiction is different from the jurisdiction of residence.
>
> (b) *Initial registration*
>
> The sex offender shall initially register--
>
> (1) before completing a sentence of imprisonment with respect to the offense
> giving rise to the registration requirement; or
>
> (2) not later than 3 business days after being sentenced for that offense, if the
> sex offender is not sentenced to a term of imprisonment.
>
> (c) *Keeping the registration current*
>
> A sex offender shall, not later than 3 business days after each change of
> name, residence, employment, or student status, appear in person in at least

1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

(d) *Initial registration of sex offenders unable to comply with subsection (b) of this section*

The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

(e) *State penalty for failure to comply*

Each jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter.

42 U.S.C. § 16913.

On February 28, 2007, pursuant to the directive set forth in subsection (d), the United States Attorney General promulgated 28 C.F.R. § 72.3, which states that "[t]he requirements of the Sex Offender Registration and Notification Act apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act."[1]

Subsection (d) of § 16913, which contains the relevant delegation of authority, has been the source of much discussion in the courts because the title of the subsection and its text are somewhat incongruous.  Some courts have held that because the title of the subsection refers only to "sex

---

[1]  In United States v. Utesch, 596 F.3d 302, 307 (6th Cir. 2010), the Sixth Circuit held that, because the Attorney General failed to follow the Administrative Procedure Act's notice and comment requirements, the regulations did not become effective until August 1, 2008.

offenders unable to comply with subsection (b) of this section [governing initial registration requirements]," the Attorney General was not given full authority to determine whether SORNA would be applied retroactively to all sex offenders convicted before July 27, 2006.  Rather, the Attorney General was given authority to make the retroactivity determination only with respect to those sex offenders unable to comply with the initial registration requirements of subsection (b). See United States v. Hinckley, 550 F.3d at 926, 929-35 (10th Cir. 2008); United States v. May, 535 F.3d 912, 915-19 (8th Cir. 2008).

Other courts, however, have held that, regardless of its title, subsection (d) contains two distinct clauses.  As the Eleventh Circuit explained in United States v. Madera, 528 F.3d 852, 858 (11th Cir. 2008), "[t]he first gives the Attorney General authority to determine whether SORNA applies retroactively to all sex offenders, and the second gives the Attorney General authority to promulgate rules regarding initial registration."  See also United States v. Hatcher, 560 F.3d 222, 226-27 (4th Cir. 2009) (describing the distinct nature of the two clauses and holding that the first clause "delegates to the Attorney General the authority to specify the requirements of SORNA for all sex offenders who were convicted before the enactment of SORNA.").

Some of the courts that have interpreted subsection (d) more narrowly have held that sex offenders who are not "unable to comply with subsection (b)," *i.e.*, those who are required to register and have already done so, lack standing to raise a non-delegation doctrine challenge since the grant of authority set forth in subsection (d) does not apply to them.  See Hinckley, 550 F.3d at 939; May, 535 F.3d at 921.  The United States relies on this line of cases in arguing that Defendant lacks standing to raise a non-delegation doctrine challenge.  Citing May, the United States argues that because Defendant registered as a sex offender before February of 2007, he was not a person

4

"unable to comply" with the initial registration requirements set forth in 42 U.S.C. § 16913(b) and

that 28 C.F.R. § 72.3 therefore did not apply to him.[2]

The Sixth Circuit, however, explicitly rejected this line of cases in United States v. Cain, 583

F.3d 408, 414-17 (6th Cir. 2009), reh'g and reh'g en banc denied (2010).  It held that SORNA

unambiguously delegates to the Attorney General the authority to determine whether SORNA

applies to those sex offenders who were convicted of a sex offense before the date of its enactment.

"Nothing in the context of the statute requires a nonliteral reading that limits the first clause of

subsection 16913(d) to offenders unable to register initially."  Id. at 415.  The Court also held that

because the text of subsection (d) was unambiguous, there was no need to consider the title of the

subsection.  Id. at 416.

Based on the Sixth Circuit's reading of 42 U.S.C. § 16913(d), as set forth in Cain, this Court

finds that Defendant does have standing to assert a non-delegation doctrine challenge.  That

challenge, however, lacks merit.  Circuit courts that have addressed this issue have uniformly held

that Congress's delegation of authority under § 16913(d) is constitutional.  In United States v.

Guzman, 591 F.3d 83, 93 (2d Cir. 2010), the Second Circuit held that Congress's delegation of

authority under SORNA was "highly circumscribed."  The court noted that SORNA dictates "what

crimes require registration, where, when, and how an offender must register, what information is

required of registrants, and the elements and penalties for the federal crime of failure to register."

Id. (internal citations omitted).  See also United States v. Whaley, 577 F.3d 254, 264 (5th Cir. 2009)

("The delegation to the Attorney General to determine the retroactive applicability of SORNA is

---

[2] Defendant was convicted of a sex offense in the Franklin County Court of Common Pleas on October 9, 2003, almost three years before SORNA was enacted.

well within the limits of permissible delegation"); United States v. Ambert, 561 F.3d 1202, 1213 (11th Cir. 2009) ("We are satisfied that Congress has provided the Attorney General with 'intelligible principles' in the Sex Offender Registration and Notification Act. Congress has undeniably provided the Attorney General with a policy framework in § 16901 to guide his exercise of discretion under § 16913(d); and it has made a series of legislative judgments in §§ 16911, 16913, 16914 and 2250 that constrict the Attorney General's discretion to a narrow and defined category."). Defendant has cited no authority to the contrary.

In addition to challenging the manner in which Congress delegated its authority to determine SORNA's retroactivity, Defendant also challenges *to whom* Congress delegated its legislative authority. Defendant maintains that because the Attorney General's Office is "not a regulatory agency, but rather a law enforcement agency . . . whose chief function is the arrest and prosecution of lawbreakers" (Mot. to Dismiss at 4), allowing the Attorney General to perform this function is particularly offensive.

Congress, however, has often delegated to the Attorney General authority to promulgate rules related to various law enforcement matters. See, e.g., 21 U.S.C. §§ 821 and 871(b) (delegating authority to promulgate rules related to registration and control of dispensing controlled substances); 8 U.S.C. § 1103(a) (charging Attorney General with the administration of laws governing immigration and naturalization); 18 U.S.C. § 4001(b) (vesting in the Attorney General the control and management of federal prisons).

In Touby v. United States, 500 U.S. 160 (1991), the Supreme Court of the United States rejected an argument very similar to the one now raised by Defendant. That case dealt with 21 U.S.C. § 811(a), the statute delegating to the Attorney General the power to add or remove

substances from the "schedules" of controlled substances.  Petitioner conceded that Congress had

the authority to delegate power to *someone* in the Executive Branch, but argued that "allowing the

Attorney General both to schedule a particular drug and to prosecute those who manufacture the

drug violates the principle of separation of powers."  Id. at 167.  The Supreme Court rejected this

argument, finding that "Petitioner's argument that temporary scheduling authority should have been

vested in one executive officer rather than another does not implicate separation-of-powers

concerns."  Id.

In this Court's view, delegating authority to determine SORNA's retroactivity to the

Attorney General, as opposed to some other official or regulatory agency within the Executive

Branch, does not raise any constitutional issues.  Congress enacted SORNA to establish a

comprehensive nationwide registry of sex offenders, and the Attorney General's Office would

appear to be the most logical federal agency to oversee Congress's mandate in this area.  As the

Eleventh Circuit noted in Ambert,

> in granting the authority to the Attorney General, Congress was
> surely aware of the Attorney General's prior experience and expertise
> to further guide and constrain him in the limited exercise of
> discretion under SORNA. In 2005, a year prior to SORNA's
> enactment, the Attorney General's office designed and created a
> national sex offender registration database as a "safety resource,
> identifying location information on sex offenders residing, working,
> and going to school not only in their own neighborhoods but in other
> nearby states and communities as well." . . . By July 1, 2006, prior to
> the enactment of SORNA, all fifty states took some part in the
> national registry.

Ambert, 561 F.3d at 1214 n.3 (internal citation omitted).  Defendant has submitted no case law in

support of his argument that this particular delegation of authority to the Attorney General is

unconstitutional.

For these reasons, the Court finds that Congress did not overstep its bounds in delegating to the Attorney General the authority to determine whether SORNA would be applied retroactively.

**II.     Commerce Clause as Providing Federal Jurisdiction**

Defendant also argues that because SORNA "regulates a purely intrastate activity that does not substantially affect interstate commerce," it violates the Commerce Clause.  (Mot. at 4). Defendant notes that the Supreme Court limited the reach of the Commerce Clause in United States v. Lopez, 514 U.S. 549 (1995) (holding that Congress overstepped its bounds by enacting the Gun-Free School Zones Act, which regulated a purely intrastate activity), and United States v. Morrison, 529 U.S. 598 (2000) (striking down a portion of the Violence Against Women Act because the conduct being regulated involved a purely intrastate non-economic activity).  Defendant argues that, as in Lopez and Morrison, failing to register as a sex offender is a purely local activity that does not substantially affect interstate commerce.

As Defendant acknowledges, however, this argument has been soundly rejected by every circuit court to have considered it.  See Guzman, 591 F.3d at 90 ("We have no difficulty concluding that § 2250(a) is a proper congressional exercise of the commerce power under Lopez."); United States v. Shenandoah, 595 F.3d 151, 160 (3d Cir. 2010) (holding SORNA "to be a proper regulation under Congress' commerce power"); United States v. Gould, 568 F.3d 459, 471 (4th Cir. 2009) (noting that a SORNA violation requires proof that the defendant traveled in interstate commerce); Whaley, 577 F.3d at 261 (concluding that "requiring sex offenders to register both before and after they travel in interstate commerce.. . is 'reasonably adapted' to the goal of ensuring that sex offenders register and update previous registrations when moving among jurisdictions."); May, 579

F.3d at 922 (holding that SORNA contains "a sufficient nexus to interstate commerce."); <u>United States v. George</u>, 579 F.3d 962, 966 (9th Cir. 2009) (rejecting argument that "SORNA's registration requirements are outside of Congress's commerce clause powers"); <u>Hinckley</u>, 550 F.3d at 940 ("By requiring that a sex offender travel in interstate commerce before finding a registration violation, SORNA remains well within the constitutional boundaries of the Commerce Clause."); <u>Ambert</u>, 561 F.3d at 1210 (concluding that "Congress had the commerce power to enact SORNA").

Defendant notes that the Sixth Circuit has not yet addressed this issue.  However, this Court has no reason to believe that the Sixth Circuit would hold any differently.  As the Eleventh Circuit noted in <u>Ambert</u>, SORNA "focuses on sex offenders . . . who travel in interstate commerce." <u>Id.</u> at 1211.  This makes it factually distinguishable from the statutes at issue in <u>Lopez</u> and <u>Morrison</u> and, in this Court's view, renders it a proper exercise of Congress's power under the Commerce Clause. The Court further notes that Defendant appears to have abandoned his Commerce Clause challenge since his reply brief is silent on this issue.

### III.    Due Process Violation

Finally, Defendant argues that the Indictment violates his Due Process rights because he was never given actual notice, by the United States, the State of Ohio or the State of North Carolina, of SORNA's registration requirements.  In support, he cites to <u>Lambert v. California</u>, 355 U.S. 225 (1957), in which the Supreme Court reversed the conviction of a defendant who had no actual knowledge of a city ordinance requiring her to register as a felon.  The Court noted that although, as a general rule, ignorance of the law is no excuse, the conduct at issue, a failure to register, was "wholly passive." <u>Id.</u> at 228.  The Court concluded that, under these circumstances, due process required that the defendant have actual notice of the registration requirement.  "Where a person did

not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process. Were it otherwise, the evil would be as great as it is when the law is written in print too fine to read or in a language foreign to the community." Id. at 230.

The United States argues that Defendant did have actual notice of his duty to register as a sex offender under the laws of Ohio and North Carolina, as evidenced by forms he signed in both of those states in January of 2010.  (Exs. A and B to Resp. Mem.).  The Sixth Circuit has held that when a sex offender has knowledge of his duty to register under state law, this qualifies as effective notice of the equivalent duty under SORNA, and forecloses any claimed due process violation.  See United States v. Samuels, 319 F. Appx. 389, 393 (6th Cir. 2009), overruled on other grounds by United States v. Utesch, 596 F.3d 302 (6th Cir. 2010).  See also Whaley, 577 F.3d at 262 (distinguishing Lambert and citing numerous circuit court cases holding that  "notice of a duty to register under state law is sufficient to satisfy the Due Process Clause."); May, 535 F.3d at 921 (same).

In his reply brief, Defendant argues that the North Carolina Notice does not address registration requirements for a sex offender who intends to move to another state, leaves North Carolina, but then becomes homeless.  The Court disagrees.  The North Carolina Notice contains a section entitled "Visiting or Entering Another State, Territory or Jurisdiction." Defendant initialed this provision indicating that he understood that "each state has its own registration laws. . . I may have an obligation to register in other states I enter . . . it is my obligation to know the law of each state I enter. . . [and] I should contact each state before entering to ensure compliance."  (Ex. B to Resp. Mem.).  Likewise, the Ohio Notice, which Defendant initialed, instructed him that he was

10

required to "register personally with the sheriff of each county in Ohio or any other state in which you reside or are temporarily domiciled for more than 3 days, within 3 days of coming into that county." (Ex. A to Response Mem.).  Even if Defendant had no permanent residence after he left North Carolina, he was on notice that if he visited or entered another state, he may have a duty to register there.

Because Defendant had actual notice of his registration duties under state law, his due process challenge necessarily fails.  See Shenandoah, 595 F.3d at 160 (finding no due process violation where defendant had notice of his registration obligations based on information provided in state registration forms, "even if that notice did not explain that a consequence of failing to register would be a violation of federal law and state law.").[3]

## IV.     Conclusion

For the reasons stated above, the Court **DENIES** Defendant's motion to dismiss the indictment on constitutional grounds.  (Doc. 23).

**IT IS SO ORDERED.**

Date: September 17, 2010                              **/s/ John D. Holschuh**
                                                     John D. Holschuh, Judge
                                                     United States District Court

---

[3]  Defendant also argues that, under 42 U.S.C. § 16917(b), which required the Attorney General to "prescribe rules" for implementing SORNA with respect to sex offenders convicted before the effective date of the statute, the Government had a duty to provide him proper notice of  SORNA's registration requirements.  However, as the Fourth Circuit held in Gould, 568 F.3d at 468, SORNA is not a specific intent statute and does not require that the defendant know that his failure to register violated federal law as opposed to state law.