## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | **Case No. 2:10-CR-196** |
| v. | : | **Judge Frost** |
| ANTHONY S. MILLER, | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM OPINION & ORDER

On July 20, 2010, Defendant Anthony S. Miller was indicted for failing to register as a sex

offender, in violation of the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C.

§ 2250(a). This matter is currently before the Court on Defendant's motion to suppress evidence

seized as a result of an allegedly illegal search and seizure of his 1990 Toyota Corolla, and all

statements made to law enforcement officers on May 10, 2010. (Doc. 21). The Court held an

evidentiary hearing on the motion on September 20, 2010, and the parties subsequently filed post-

hearing briefs. For the reasons set forth below, the Court denies Defendant's motion.

## I.      Factual Background and Procedural History

According to the Criminal Complaint filed by Deputy U.S. Marshal Nicole Ralston,

Defendant pleaded guilty on October 9, 2003 in the Franklin County Court of Common Pleas to

abduction and gross sexual imposition. On December 19, 2003, he was sentenced to two years in

prison. Deputy Ralston alleged that on January 6, 2010, Defendant signed a form acknowledging

that he was subject to Ohio's sex offender registration requirements. On that form, he indicated that

he intended to move to North Carolina. On January 14, 2010, Defendant registered as a sex offender

in Wayne County, North Carolina. On March 23, 2010, he informed Wayne County officials that he was moving back to Ohio.

According to Deputy Ralston, Defendant resided in Columbus, Ohio from March 24-28, 2010, but not at the address he gave to the Wayne County, North Carolina officials. He then apparently traveled to Washington, D.C. where, on April 2, 2010, he received a ticket for possession of marijuana. On April 29, 2010, he sent an email to the United States Marshals Service indicating that he was living in his car somewhere in West Virginia. In her Criminal Complaint, Deputy Ralston alleged that there was probable cause to believe that Defendant had failed to update his sex offender registration in Ohio and in West Virginia as required by SORNA. Based on that Criminal Complaint, an arrest warrant was issued on May 3, 2010. Defendant was arrested by U.S. Deputy Marshal Fred Lamey on Saturday night, May 8, 2010 outside the Go-Mart convenience store in Beckley, West Virginia.

At the September 20, 2010 hearing on Defendant's motion to suppress, Deputy Lamey testified that he had been actively looking for Defendant. He knew of the outstanding arrest warrant issued by the Southern District of Ohio, and knew that Defendant may be residing in West Virginia. In connection with this "collateral lead," he had a photograph of Defendant and knew that Defendant was driving a red Toyota Corolla with Ohio license plates. (Hrg. Tr. at 21, 75). Because Defendant was wanted for failure to register as a sex offender, Lamey was looking for "evidence that would prove his whereabouts from the time he had left Ohio." (Id. at 24).

Lamey found Defendant in a red Toyota Corolla in the Go-Mart parking lot. When Lamey approached the car, he observed several receipts from stores and banks on the front passenger seat. (Id. at 25, 47). Lamey asked Defendant to identify himself and then placed him under arrest. He

2

conducted a patdown search, handcuffed Defendant and placed him in the back of his government-owned vehicle. (Id. at 25). Lamey then called for assistance and, because he did not know whether the vehicle would have to be towed, he "did a quick search of the immediate area where Mr. Miller was sitting for any weapons or anything dangerous." He seized three pocket knives. (Id. at 26-27). During this protective sweep, he again observed the receipts on the passenger seat. (Id. at 27).

Lamey decided to seize the car because he did not want to leave it abandoned in the parking lot, and because he knew that it contained evidence that would document Defendant's recent travels. (Id. at 65). Lamey knew that Defendant lacked money to pay the cost of a tow truck and impound lot fees. Therefore, at the suggestion of his supervisor, Lamey asked Defendant for permission to drive the Corolla to the Beckley courthouse. Defendant agreed. (Id. at 28-29). Lamey drove Defendant's car to the courthouse and another Task Force Officer who had arrived on the scene took Defendant to the Southern Regional Jail. (Id.).

On Monday morning, May 10, 2010, at approximately 9:00 a.m., Lamey and his partner, Deputy Marshal Shane Osgood, picked Defendant up from the jail and transported him to the federal courthouse in Beckley for his initial appearance with Magistrate Judge R. Clarke VanDervort. Once they arrived at the courthouse, Lamey called the judge's chambers to schedule the hearing. (Id. at 31). The judge's clerk told Lamey that she would call him later to let him know when the judge was available. (Id. at 31-33).

Magistrate Judge VanDervort presides over cases and has offices at the United States Courthouses in Bluefield and in Beckley. (Stip. at ¶ 5). According to the court's calendar, accessed online by Lamey that Monday morning, the judge would be participating in a phone mediation in Beckley that day. Lamey therefore assumed that the initial appearance would also be held in

3

Beckley. He did not discuss the location with the judge's clerk. Unbeknownst to Lamey and contrary to what the online calendar indicated, Magistrate Judge VanDervort was actually at his Bluefield office on that date, and intended to hold the initial appearance there once he had completed the phone mediation. (Hrg. Tr. at 32-33, 60; Stip. at ¶¶ 1, 8, 9).

At approximately 1:15 p.m., while waiting to hear what time the initial appearance would be held, Lamey and Osgood decided to interview Defendant in a room at the Beckley courthouse. (Hrg. Tr. at 34-35). Defendant, who told Osgood that he could read and write, signed a written waiver of his Miranda rights. (Id. at 35-36, 58; Govt. Ex. 1). Defendant told the deputies that he left North Carolina at the end of March and went back to Ohio for a short period of time. He then traveled to Washington D.C. where he received a ticket for possession of marijuana. Shortly thereafter, he drove to Beckley, West Virginia, where he had been living for about two weeks. (Hrg. Tr. at 37). Defendant acknowledged that he was required to register as a sex offender in any state where he was living. He stated that he did not register in West Virginia because he was afraid that he would be arrested for leaving Ohio without notice, or would be arrested for the outstanding ticket for possession of marijuana. (Id. at 38). The deputies then requested and received written consent to search Defendant's vehicle. (Id. at 39; Govt. Ex. 2). The entire interview lasted about 20 minutes. (Hrg. Tr. at 44).

At 2:10 p.m., the judge's clerk called Lamey to tell him that the judge was ready to conduct the initial appearance. Only then did Lamey learn that the judge was in Bluefield rather than in Beckley. Lamey and Osgood immediately set out with Defendant for Bluefield, which was about one hour away. (Stip. at ¶¶ 12-13; Hrg. Tr. at 43, 61). The trip was aborted when the clerk called to inform them that Magistrate Judge VanDervort had decided to postpone the initial appearance

4

until Tuesday. Not only was it getting late in the day, but Magistrate Judge VanDervort believed that it would be better to conduct the initial appearance as part of his criminal calendar on Tuesday because an assistant federal public defender would be present and could be immediately appointed to represent Defendant. (Hrg. Tr. at 44; Stip. at ¶ 14).

The deputies fully searched Defendant's car at the Beckley courthouse at approximately 4:30 on Monday afternoon. (Hrg. Tr. at 57). They seized multiple time-and-date-stamped receipts from North Carolina, Ohio, Washington D.C., and West Virginia. However, they did not complete an inventory sheet. (Id. at 40-41, 56). Defendant's initial appearance was held at approximately 11:00 a.m. on Tuesday, May 11, 2010 before Magistrate Judge VanDervort.

## II.     Summary of Arguments

In his motion to suppress, Defendant argues that the evidence obtained from the illegal search and seizure of his car must be suppressed as fruit of the poisonous tree under Wong Sun v. United States, 371 U.S. 471 (1963). Defendant further argues that because the warrantless seizure of his car was illegal, his subsequent written consent to search the car was invalid. Defendant also maintains that the statements he made to Lamey and Osgood must be suppressed because they were obtained after an unreasonable delay in bringing him before a magistrate judge.

It is the Government's position that the search and seizure of Defendant's vehicle was lawful because: (1) Defendant consented; (2) the "automobile exception" to the warrant requirement applies; and/or (3) the "inevitable discovery" doctrine applies. The Government denies that the delay in the initial appearance was unreasonable, and argues that Defendant's voluntary confession is therefore admissible.

## III.    Warrantless Search and Seizure

The Court turns first to the question of the warrantless search and seizure of Defendant's

vehicle and its contents.  The Fourth Amendment to the United States Constitution guarantees the

right to be free from "unreasonable searches and seizures."  U.S. Const. amend. IV.  As a general

rule, evidence obtained in violation of the Fourth Amendment is inadmissible at trial.  See Mapp v.

Ohio, 367 U.S. 643, 648 (1967).  As the Supreme Court explained in Murray v. United States, 487

U.S. 533 (1988):

> The exclusionary rule prohibits introduction into evidence of tangible
> materials seized during an unlawful search, and of testimony
> concerning knowledge acquired during an unlawful search.  Beyond
> that, the exclusionary rule also prohibits the introduction of derivative
> evidence, both tangible and testimonial, that is the product of the
> primary evidence, or that is otherwise acquired as an indirect result
> of the unlawful search, up to the point at which the connection with
> the unlawful search becomes so attenuated as to dissipate the taint.

Id. at 536-37 (internal quotes and citations omitted).  Such derivative evidence acquired as a

consequence of an illegal search or seizure is inadmissible under the "fruit of the poisonous tree"

doctrine.  See Wong Sun, 371 U.S. at 485-86.

Searches and seizures conducted without warrants issued by a judge or magistrate are per se

unreasonable unless a specifically established exception applies.  See Katz v. United States, 389 U.S.

347, 357 (1967).  Even when probable cause unquestionably exists, warrantless searches have been

held unlawful because the Constitution requires "that the deliberate, impartial judgment of a judicial

officer . . . be interposed between the citizen and the police."  Wong Sun, 371 U.S. at 481-82.  The

burden is on the government to demonstrate that an exception to the warrant requirement applies.

See Welsh v. Wisconsin, 466 U.S. 740, 750 (1984).

6

As noted above, Deputy Lamey first observed the receipts on the passenger seat of Defendant's car when he approached Defendant in the Go-Mart parking lot. He observed them again while conducting a brief protective sweep for weapons after Defendant had been arrested and was secured in the back of Lamey's vehicle. Defendant then agreed to let Lamey drive the car to the courthouse. Lamey, however, did not fully search the car or seize the receipts until Monday afternoon, after he and Deputy Osgood obtained Defendant's written consent to search the car.

The Government maintains that, under these facts, several exceptions to the warrant requirement apply. According to the Government, not only did Defendant expressly consent to the search and seizure of his vehicle, but the search and seizure were also justified under the automobile exception to the warrant requirement and the inevitable discovery doctrine. Because the Court finds that Defendant's consent was valid, and that the automobile exception applies, the Court does not reach the question of the applicability of the inevitable discovery doctrine.

## A.     Warrantless Seizure of Receipts Was Constitutional

As the Sixth Circuit explained in United States v. Smith, 510 F.3d 641 (6th Cir. 2007), "[u]nder the automobile exception, police officers may conduct a warrantless search of a vehicle if they have 'probable cause to believe that the vehicle contains evidence of a crime.'" Id. at 647 (quoting United States v. Lumpkin, 159 F.3d 983, 986 (6th Cir. 1998)). "[T]he automobile exception is justified not only by the exigency created by the 'ready mobility' of vehicles, but also by the lesser expectation of privacy operators have in their vehicles." Id. at 650.

Here, the deputy marshals had probable cause to believe that Defendant's car contained evidence of the crime for which he was being arrested, failure to register as a sex offender under SORNA. Lamey testified that "[p]art of the collateral lead requested the collection of any evidence

7

that would prove [Defendant's] whereabouts from the time he had left Ohio." (Hrg. Tr. at 24). Deputy Lamey testified that when he approached Defendant's car in the parking lot, he observed numerous bank receipts and store receipts on the passenger seat. Although he could not read what was printed on the receipts, he recognized what they were and reasonably believed that they would document the dates and places of Defendant's recent travels. Because travel in interstate commerce is one of the elements of failing to register as a sex offender under SORNA, the potential evidentiary value of the receipts was obvious, thereby establishing the requisite probable cause and justifying the search of Defendant's vehicle under the automobile exception to the warrant requirement.

Defendant denies that the receipts were sufficient to establish probable cause. He argues that because it is undisputed that he was living out of his car, "it is more probable that the receipts were from the Go-Mart where he was parked and known to be residing as opposed to evidence of a crime." (Def.'s Post-Hearing Brief at 8). The Court rejects this argument. Even if the receipts were from purely local establishments, the time and date stamps on the receipts would nevertheless prove how long Defendant had been residing in West Virginia. If he had been living there for longer than three days and had failed to register as a sex offender, this would constitute evidence of a crime. See 42 U.S.C. § 16913(c). In the Court's view, from the moment Deputy Lamey first observed the receipts on the passenger seat of Defendant's car, he had probable cause to believe that the vehicle contained evidence of the crime for which Defendant was being arrested.

Lamey observed the same receipts while conducting a brief protective sweep of the car for weapons.[1] Defendant maintains that the automobile exception to the warrant requirement does not

---

[1] Citing Arizona v. Gant, 129 S.Ct. 1710, 1718 (2009), Defendant argues that the protective sweep of his car was unlawful because when it was conducted, he was already handcuffed and secured in the back of Deputy Lamey's vehicle. In Gant, the Supreme Court held

8

apply because Deputy Lamey did not take a close look at the receipts or seize those documents at the

scene of the arrest. (Hrg. Tr. at 27). The documents were not "seized" until Monday afternoon, May

10th, when Lamey and Osgood conducted a thorough search of the vehicle at the federal courthouse.

The delay in seizing the documents, however, is of no consequence. In United States v. Johns, 469

U.S. 478 (1985), the Supreme Court held that if the officers would have been legally justified in

conducting a warrantless search on the scene, that justification does not vanish simply because the

officers decide to impound the car and search it at a later time. Id. at 484 (citing Michigan v.

Thomas, 458 U.S. 259, 261 (1982)). Because Deputy Lamey had probable cause to believe that

Defendant's car contained evidence of a crime and because he would have been justified in searching

the car at the scene of the arrest, the warrantless search and seizure of the receipts two days later at

the courthouse was also proper under the automobile exception to the warrant requirement.

Moreover, prior to the search and seizure, the deputies obtained Defendant's written consent.

(Hrg. Tr. at 39; Govt. Ex. 2). Because Defendant expressly consented to the search, he waived his

right to challenge its constitutionality. See United States v. Hinojosa, 606 F.3d 875, 881 (6th Cir.

2010) ("It is well settled that a person may waive his Fourth Amendment rights by consenting to a

---

that officers could not search a vehicle incident to a lawful arrest unless the arrestee was "within
reaching distance of the passenger compartment at the time of the search." Id. at 1723. The
Court agrees that there is some question about the need for a protective sweep of the vehicle,
particularly since Defendant was being taken into custody on an outstanding warrant and would
not be returning to his car. But even if the protective sweep itself was illegal, this does not
change the fact that Lamey, at that point, already had probable cause to believe that the car
contained evidence of the crime for which Defendant was being arrested. It is also undisputed
that Lamey gained no additional information about the receipts during the protective sweep; he
was searching only for weapons. Notably, Defendant neglects to point out that the Court in Gant
also held that police may search a vehicle incident to an arrest if "it is reasonable to believe the
vehicle contains evidence of the offense of arrest." Id. This was clearly the case here. Although
not argued by the Government, this second prong of Gant provides an additional justification for
the warrantless search of Defendant's car.

9

search."). Citing United States v. Chambers, 395 F.3d 563, 569-70 (6th Cir. 2005), Defendant argues that because the seizure of his vehicle was illegal, his subsequent written consent is invalid and the receipts should be suppressed as fruit of the poisonous tree. The Court rejects this argument because, as discussed in the following section, the seizure of the car was constitutional.

**B.    Warrantless Seizure of Vehicle Was Constitutional**

Defendant also challenges the warrantless seizure of his vehicle. He notes that, at the hearing, Deputy Lamey admitted that he was "not 100 percent" familiar with the policy of the United States Marshals Service concerning the seizure of vehicles. (Hrg. Tr. at 50-51). Defendant did not introduce that policy into evidence. He nevertheless maintains that Lamey failed to follow the proper procedures by housing the car at the federal courthouse and by failing to conduct a seizure inventory. Defendant does not explain how these alleged procedural violations render the seizure of the vehicle unconstitutional.

The Court finds that the warrantless seizure of Defendant's vehicle was justified. At the hearing, Deputy Lamey testified that he decided to seize the vehicle for two reasons. First, he did not want to leave it abandoned in the parking lot. Second, he knew that the car contained evidence documenting Defendant's recent travels. (Hrg. Tr. at 65). Either reason provides a sufficient justification for seizing the car.

Defendant was arrested at the scene pursuant to the outstanding warrant. It was not known how long he would be in custody. Leaving the car in the parking lot of the Go-Mart would have made it an easy target for vandalism or theft. Deputy Lamey was therefore justified in seizing the car to keep it safe, regardless of whether it also contained evidence of a crime. In United States v. Rose, No. 93-5302, 1993 WL 539248 (6th Cir. Dec. 29, 1993), the Sixth Circuit noted that "police

10

officers frequently assume custody of automobiles" as part of their "community caretaking functions." Id. at *3 (citing South Dakota v. Opperman, 428 U.S. 364, 368 (1976)). In Rose, the court held that the officer was justified in seizing the defendant's car following an arrest on an outstanding warrant. "[I]t was not unreasonable for the officer to decide against leaving the car at the shopping center for an indeterminate period of time." Id. at *3. See also United States v. Harvey, 16 F.3d 109, 112 (6th Cir. 1994) ("the police lawfully exercised their discretion in deciding to impound the vehicle in the absence of any licensed driver to attend to it"); Kirk v. Muskingham County, No. 2:09-cv-583, 2010 WL 3719286, at *4 (S.D. Ohio May 24, 2010) ("when taking a person in custody, police will generally have the authority to impound a vehicle"); Ramirez v. City of Buena Park, 560 F.3d 1012, 1025 (9th Cir. 2009) (holding that impoundment of arrestee's car was reasonable under the "community caretaking doctrine"); United States v. Smith, 522 F.3d 305, 314-15 (3d Cir. 2008) (same); Vega-Encarnación v. Babilonia, 344 F.3d 37, 41 (1st Cir. 2003) ("[W]here a driver is arrested and there is no one *immediately* on hand to take possession, the officials have a legitimate non-investigatory reason for impounding the car.")

Deputy Lamey was also entitled to seize the vehicle under the automobile exception to the warrant requirement because, as discussed earlier, he had probable cause to believe that it contained evidence of the crime for which Defendant was arrested. See United States v. Bagley, 772 F.2d 482, 491 (9th Cir. 1985) (holding that warrantless seizure of a vehicle based on probable cause falls within the automobile exception); United States v. Rodriguez, No. 1:09-cr-372, 2010 WL 955933, at *9 (W.D. Mich. Mar. 15 2010) ("once the troopers had probable cause to believe the vehicle contained evidence of a crime, it was reasonable for them to move the vehicle to the Michigan State Police post for a more extensive search.").

11

The fact that Lamey decided to take the car to the courthouse rather than have it towed to an impound lot is of little consequence. The important point is that he was entitled to take possession of the vehicle and, as discussed above, to search it for evidence of the crime for which Defendant was arrested. Moreover, it is undisputed that Defendant gave Deputy Lamey permission to drive the vehicle from the Go-Mart to the courthouse. For all of these reasons, the Court finds that the seizure of the vehicle was proper.

## IV.     Delay in Presentment Not Unnecessary or Unreasonable

Federal Rule of Criminal Procedure 5(a)(1)(A) states that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge. . ." Although Defendant was arrested on Saturday, May 8, 2010, his initial appearance was not held until Tuesday, May 11, 2010. He argues that the statements that he made to the deputy marshals during the interim, on Monday, May 10, 2010, should be suppressed because of an unreasonable delay in presentment.

The admissibility of Defendant's statements is governed by 18 U.S.C. § 3501(c). That statute creates a "safe harbor" for voluntary confessions made within six hours of an arrest. With respect to voluntary confessions made more than six hours after an arrest but before presentment to a magistrate judge, the admissibility of the confession turns on whether the delay in presentment was unreasonable or unnecessary. The statute reads as follow:

> (c) In any criminal prosecution by the United States . . . a confession made or given by a person who is a defendant therein, while such person was under arrest . . . shall not be inadmissible solely because of delay in bringing such person before a magistrate judge . . . if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours

12

> immediately following his arrest . . . : *Provided*, That the time
> limitation contained in this subsection shall not apply in any case in
> which the delay in bringing such person before such magistrate judge
> or other officer beyond such six-hour period is found by the trial
> judge to be reasonable considering the means of transportation and
> the distance to be traveled to the nearest available such magistrate
> judge or other officer.

18 U.S.C. § 3501(c).

The Supreme Court recently held that, in evaluating a motion to suppress based on a delay

in presentment, a district court must first determine whether the defendant confessed within six hours

of arrest. If so, the confession is generally admissible if it was voluntarily made. "If the confession

occurred before presentment and beyond six hours, however, the court must decide whether delaying

that long was unreasonable or unnecessary . . . and if it was, the confession is to be suppressed."

Corley v. United States, 129 S.Ct. 1558, 1571 (2009). This is true even if the confession was

voluntary. Id. at 1563.

Deputy Lamey testified that Defendant was not questioned on Saturday night because

Lamey's partner, Deputy Marshal Shane Osgood, was not available, and agency policy required two

deputies to be present for an interview. (Hrg. Tr. at 34). Because Defendant's confession was not

made within six hours following his arrest, the Court must determine whether the delay in

presentment was unreasonable or unnecessary.

As the Supreme Court explained in Corley,

> [P]resentment is the point at which the judge is required to take
> several key steps to foreclose Government overreaching: informing
> the defendant of the charges against him, his right to remain silent, his
> right to counsel, the availability of bail, and any right to a preliminary
> hearing; giving the defendant a chance to consult with counsel; and
> deciding between detention or release.

13

129 S.Ct. at 1570.   The purpose of the prompt presentment requirement is to prevent law

enforcement officials from secretly detaining individuals for lengthy periods and presenting them

to a magistrate only after obtaining a confession. Id. at 1562-63.  The Supreme Court has noted that

a "delay for the purpose of interrogation is the epitome of 'unnecessary delay.'" Id. at 1563 (quoting

Mallory v. United States, 354 U.S. 449, 455-56 (1957)).   Where presentment is delayed for the

purpose of interrogation, courts have not hesitated to exclude a defendant's statements.  See, e.g.,

United States v. Liera, 585 F.3d 1237 (9th Cir. 2009); United States v. Wilson, 838 F.2d 1081 (9th

Cir. 1988).

Defendant does not argue that it was unreasonable for the deputies to wait until Monday

morning, the first business day following his arrest, to attempt to schedule his initial appearance.

Magistrate judges are not expected to be available over the weekend hours.  See United States v.

VanPoyck, 77 F.3d 285, 289 (9th Cir. 1996) (holding that weekend delay due to the unavailability

of a magistrate judge is not unreasonable). As the Ninth Circuit held in United States v. Garcia-

Hernandez, 569 F.3d 1100, 1106 (9th Cir. 2009), "administrative delays due to the unavailability of

government personnel and judges necessary to completing the arraignment process are reasonable

and necessary and therefore do not violate the prompt-presentment requirement of Rule 5(a)."

Defendant does argue, however, that delaying his initial appearance until Tuesday morning

was unreasonable and unnecessary.  He maintains that Magistrate Judge VanDervort was, in fact,

available to do the initial appearance on Monday, albeit in Bluefield rather than Beckley.  He also

argues that the deputies should have known that the judge was in Bluefield that day, regardless of

what the online calendar indicated.    However, there is absolutely no evidence that the

misunderstanding concerning Magistrate Judge VanDervort's whereabouts on that date resulted from

14

anything other than an honest mistake. More importantly, there is not a shred of evidence that the deputies deliberately delayed presenting Defendant to a magistrate judge for the purpose of interrogating Defendant and extracting a confession.

The record shows that Deputy Lamey contacted Magistrate Judge VanDervort's chambers early on Monday morning to schedule the initial appearance, which Lamey understood would be held later that day. He repeatedly testified that he was ready to take Defendant to the judge whenever and wherever he was directed to do so. (Hrg. Tr. at 33, 44, 62, 67). When the deputies interviewed Defendant at 1:15 p.m. on Monday, they were still under the impression that the initial appearance would be held that afternoon. At approximately 2:00 p.m., they learned that the judge was available. They also learned, for the first time, that the judge was in Bluefield rather than in Beckley. They immediately took steps to transport Defendant to Bluefield for the hearing. The trip was aborted only because Magistrate Judge VanDervort decided that it would make more sense to hold the initial appearance during his regularly-scheduled criminal calendar the next day in Beckley at which time an assistant federal public defender would be available to represent Defendant.

Defendant argues that the deputies should have taken him to another federal or state judge so that the initial appearance could be held on Monday. Deputy Lamey testified, however, that Magistrate Judge VanDervort is the only magistrate judge assigned to Beckley and Bluefield, and there was no district court judge in the Beckley courthouse at that time. (Hrg. Tr. at 60, 77-78). Moreover, where, as here, a defendant is arrested in a district other than where the offense was allegedly committed, the Federal Rules of Criminal Procedure do not provide the option of holding an initial appearance before a state or local judicial officer. Compare Fed. R. Crim. P. 5(c)(1) with Fed. R. Crim. P. 5(c)(2).

15

Under the circumstances presented here, it appears that a hearing before Magistrate Judge VanDervort was the only truly viable option, and the deputies did everything within their power to schedule an initial appearance with him on Monday. Through no fault of their own, the hearing was postponed until Tuesday. As noted earlier, there is no evidence whatsoever that they deliberately delayed presentment for the purpose of coercing a confession from Defendant or to buy time to gather additional evidence to be used against him. For these reasons, the Court concludes that the delay in presentment was neither unreasonable nor unnecessary. Moreover, the purpose of the exclusionary rule is to deter unlawful behavior by law enforcement officers. In the Court's view, absent some showing that the delay in presentment was motivated by an improper purpose, there is no reason to suppress Defendant's statements.

Because the deputies in this case did not delay presentment to the magistrate judge for any improper purpose, the Court finds no reason to exclude Defendant's statements which were given following a knowing and voluntary waiver of his Miranda rights. As the Ninth Circuit held in VanPoyck, 77 F.3d at 290, public policy does not require the suppression of a confession where the officers did not intentionally postpone the initial appearance so that they could interrogate the defendant.

## V.     Conclusion

For the reasons set forth above, the Court **DENIES** Defendant's motion to suppress (Doc. 21).

## IT IS SO ORDERED.

16

Date: _1/6/11_

Gregory L. Frost, Judge
United States District Court

17